UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-CR-249 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| RANDY WREN, | |
| Defendant(s). | |

Presently before the court is defendant Randy Lee Wren's ("Wren") emergency motion for compassionate release under the First Step Act. (ECF No. 67). The United States of America ("government") filed a response (ECF No. 71) to which Wren replied (ECF No. 72).

**I.   Background**

On November 27, 2017, Wren was sentenced to 97 months in prison and lifetime supervision for receipt of child pornography. (ECF No. 52). The sentence was recommended by both parties and was at the high-end of the sentencing guideline range. (ECF No. 71 at 19; ECF No. 72 at 5). Wren's projected release date is June 30, 2022. (ECF No. 67 at 2). He is eligible for home confinement on December 30, 2021. (*Id.* at 1).

While Wren has been incarcerated at FCI Lompoc, a novel strain of coronavirus and the resultant respiratory disease, COVID-19, have run rampant, especially in our country's prisons. The Centers for Disease Control ("CDC") warns that the virus can lead to "hospitalization, admission to the ICU, intubation or mechanical ventilation, or death," especially for older adults and people with certain serious and uncontrolled medical conditions. Centers for Disease Control, *Evidence used to update the list of underlying medical conditions that increase a*

**James C. Mahan**
**U.S. District Judge**

*person's risk of severe illness from COVID-19*, (last updated July 28, 2020).[1]

The government has assured courts that the Bureau of Prisons ("BOP") has taken extraordinary precautions to minimize coronavirus transmission in its facilities. (ECF No. 71 at 6–8). But despite the BOP's precautions, 11,435 inmates and 1,042 staff members have tested positive for the virus and 118 inmates have died. Federal Bureau of Prisons, *COVID-19 Coronavirus*, (last visited September 14, 2020).[2] These grim numbers are likely understated as well because testing in BOP's facilities has allegedly been "scant except for people who self-report symptoms[.]" *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote citation omitted). At FCI Lompoc, 1,039 inmates have been tested for the coronavirus and 812 tested positive. (ECF No. 67 at 9–10). There are no current inmate cases at the facility and Wren says he was tested as part of a mass testing program. (ECF No. 67 at 14; ECF No. 71 at 8).

**II.     Legal Standard**

The court can modify a prison sentence for "extraordinary and compelling reasons" under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5239 (Dec. 21, 2018). 18 U.S.C. § 3582(c)(1)(A). This statutory authorization is a limited exception to the general rule that a court "may not correct or modify a prison sentence once it has been imposed." *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)).

Before a defendant can move for compassionate release, he must first ask the BOP to do so on his behalf, typically by submitting a request to the warden. 18 U.S.C. § 3582(c)(1)(A). He must then exhaust all administrative rights to appeal the BOP's denial of his request or wait thirty days for his request to go unanswered, whichever comes first.[3] *Id.*

---

[1] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html.

[2] *Available at* https://www.bop.gov/coronavirus/.

[3] The exhaustion requirement is not in dispute here. Wren's release request has gone unanswered by the warden at FCI Lompoc for more than 30 days. (ECF No. 67 at 8).

**James C. Mahan**
**U.S. District Judge**

To grant compassionate release, the court must make two findings.  First, there must be "extraordinary and compelling reasons" that warrant compassionate release and, second, release must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*  The applicable Sentencing Commission policy statement lists specific circumstances related to the defendant's medical condition, age, and family circumstances that are extraordinary and compelling.[4]  USSG § 1B1.13, cmt. 1.  The policy statement also requires the court to consider whether the defendant is a danger to the community based on the factors set forth in 18 U.S.C. § 3142(g).  USSG § 1B1.13(2).

District courts have granted compassionate release under circumstances beyond those listed in the policy statement.  *United States v. Regas*, No. 391CR00057MMDNA1, 2020 WL 2926457 (D. Nev. June 3, 2020); *United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 2020 WL 2535049 (S.D. Cal. May 15, 2020); *United States v. Kesoyan*, Case No. 2:15-cr-236-JAM, 2020 WL 2039028 (E.D. Cal. Apr. 28, 2020).  That is because the policy statement was last substantively amended in November 2016, before the passage of the First Step Act in December 2018.  Courts have reasoned that Congress's intent in passing the First Step Act—which allows inmates to move for compassionate release when the BOP declines to do so—was to entrust district courts to consider a wider variety of circumstances that could be extraordinary and compelling.  *See Arreola-Bretado*, 2020 WL 2535049, at *2.  The court agrees that its discretion to grant compassionate release is not strictly limited to the specific circumstances in the Sentencing Commission's outdated policy statement.

Lastly, the court must consider any applicable sentencing factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).  The factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range

---

[4] The four specific extraordinary and compelling circumstances are: (1) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover which "substantially diminish" the defendant's capacity for self-care in prison; (2) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; (3) certain family circumstances like the incapacitation of a spouse or children's caregiver; and (4) other reasons "as determined by the Director of the [BOP]." USSG § 1B1.13, cmt. 1.

James C. Mahan
U.S. District Judge

- 3 -

established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims.  18 U.S.C. § 3553(a)(1)-(7).

### III.    Discussion

On May 5, 2020, Wren tested positive for COVID-19.  (ECF No. 67 at 13).  He was quarantined for four days and did not have significant symptoms.  Wren has not been retested since and is not housed in any isolation unit.  (ECF No. 72 at 2).  Wren fears re-infection and severe complications.  (ECF No. 67 at 18).  He has been taking several antibiotics to treat "unresolved pneumonia and acute sinusitis" and has been awaiting surgery to obviate the need for these antibiotics since May 2019.  (ECF No. 67 at 14).  Wren—who is 60 years old—has numerous other significant health issues: edema, essential primary hypertension, a BMI of 30, and body rashes/contact dermatitis.  (*Id.* at 16).

Wren also argues that he is not a danger to the community.  (*Id.* at 20).  His child pornography crime was "brought about by his methamphetamine addiction" which has been mitigated by his successful completion of drug treatment programs.  (*Id.*).  Wren has been imprisoned for almost four years, had zero criminal history points, and has a spotless disciplinary record.  (*Id.*).

The government opposes Wren's compassionate release request.  (ECF No. 71).  The purpose of compassionate release is to "reduce the risk of vulnerable inmates contracting COVID-19" so releasing an inmate that has already contracted the virus does not make "logical sense."  (*Id.* at 8–9).  Wren was an "asymptomatic carrier who suffered virtually no adverse effects," making his fear of reinfection and severe complications unpersuasive.  (*Id.* at 12).  The government views Wren as trying to "cobble together" several conditions, "none of which make him a high-risk patient."  (*Id.* at 16).

The government also argues that Wren is a danger to the community and that the section 3553(a) factors militate against his release.  (*Id.* at 1).  He has served only about half of his 97 month prison term and the nature of his crime was truly serious: "Wren's actions were not a run-

**James C. Mahan**
**U.S. District Judge**

- 4 -

of-the-mill child pornography offense but rather encompassed the very real coercion and enticement of a minor and using threats and extortion to manipulate that child into producing child pornography for his sexual deviance." (*Id.* at 19). "While drug use may lower inhibitions, it does not produce pedophiles." (*Id.*).

The court finds that Wren's medical condition is not an extraordinary and compelling reason that warrants compassionate release. The CDC warns that older adults and people with certain serious and uncontrolled medical conditions have an increased risk of severe illness and death from the coronavirus. Courts considering compassionate release have consistently required inmates to show their vulnerability to these serious complications. *See, e.g.*, *United States v. Hill*, No. 213CR00012GMNPAL, 2020 WL 3060742, at *2 (D. Nev. June 8, 2020) (citing cases). Wren has a history of unresolved chronic pneumonia, sinusitis, edema, and essential primary hypertension. (ECF No. 67 at 16). He has scarred lung tissue and difficulty breathing. While these are the kinds of pulmonary and respiratory conditions that could lead to complications, the CDC does not currently have strong and consistent evidence that they, in fact, do so like cancer, chronic kidney disease, and COPD, among other conditions. Centers for Disease Control, *supra.*

Furthermore, scientists and health experts have not reached a consensus on the possibility of reinfection from the virus. (ECF No. 67 at 17–19; ECF No. 71 at 9–12; ECF No. 72 at 2–4). The court will not resolve this open epidemiological question. And courts are split in their treatment of COVID-positive inmates seeking compassionate release. *Compare United States v. Arreola-Bretado*, 445 F. Supp. 3d 1154, 1158 (S.D. Cal. 2020); *United States v. Fischman*, No. 16-CR-00246-HSG-1, 2020 WL 2097615, at *1 (N.D. Cal. May 1, 2020), *with United States v. Zahn*, No. 4:18-CR-00150-JD-1, 2020 WL 3035795, at *1 (N.D. Cal. June 6, 2020); *United States v. Purry*, No. 214CR00332JADVCF, 2020 WL 2773477, at *1 (D. Nev. May 28, 2020). At the least, a lack of consensus on reinfection should not weigh *in favor* of compassionate release.

**James C. Mahan**
**U.S. District Judge**

- 5 -

As aforementioned, the court will not strictly adhere to the Sentencing Commission's outdated policy statement that defines extraordinary and compelling circumstances. Nevertheless, Wren's circumstances are not squarely comparable in two respects.

First, his medical condition does not "substantially diminish [his ability] to provide self-care within" the correctional facility. USSG § 1B1.13, cmt. 1. Wren has "endured the illness seemingly without substantial adverse health outcomes and has returned largely to his baseline health status." (ECF No. 71 at 9). Second, the Commission's extraordinary and compelling circumstances include "aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence." USSG § 1B1.13, cmt. 1. Wren is 60 years old and has served only about 50% of his sentence. (ECF No. 67 at 1). He is eligible for home confinement on December 30, 2021. (*Id.*). The percentage of time served in this case is more than in all the government's cited cases denying compassionate release on this basis. (ECF No. 71 at 18). Nevertheless, granting compassionate release would be a sizeable reduction of Wren's prison sentence.

Because Wren's medical condition is not an extraordinary and compelling reason that warrants compassionate release, the court will not consider if he would be a danger to the community and if the section 3553(a) factors weigh in favor of his release. *Compare United States v. Arreola-Bretado*, 445 F. Supp. 3d 1154, 1159 (S.D. Cal. 2020) ("Section 3142(g) has not before, and should not now, be read to bar the release of any individual with a communicable disease."), *with United States v. Davis*, No. 06-20020-002, 2020 WL 2395977, at *2 (C.D. Ill. May 12, 2020) ("[R]eleasing [the defendant] into the community while he has COVID-19 is a danger to the safety of the community.").

. . .
. . .
. . .
. . .
. . .
. . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Wren's emergency motion for compassionate release under the First Step Act (ECF No. 67) be, and the same hereby is, DENIED.

DATED September 16, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 7 -